**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

Nikki J. Parker,                    )
                                    )
                  Plaintiff,        )  No.  **CV 10-0304-PHX-NVW**
                                    )
vs.                                 )
                                    )        **Phoenix, Arizona**
                                    )        **August 6, 2010**
McCarville Law Offices, PLC,        )          **10:04 a.m.**
                                    )
                  Defendants.       )
_____

BEFORE:  **THE HONORABLE NEIL V. WAKE**
         UNITED STATES DISTRICT JUDGE

(_**Scheduling Conference**_)

Official Court Reporter:
Laurie A. Adams, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 43
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

25

1

2    **APPEARANCES:**

3    For the Plaintiff:

4            THE STROJNIK FIRM LLC
             By:  **Peter Kristofer Strojnik, Esq.**
5            3030 N. Central
             Suite 1401
6            Phoenix, AZ 85012

7    For the Defendants:

8            LITTLER MENDELSON PC
             By:  **Kristy Leah Peters, Esq.**
9            By:  **Laurent Richard George Badoux, Esq.**
             2425 E. Camelback Road
10           Suite 900
             Phoenix, AZ 85016
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2            THE COURTROOM DEPUTY:  This is CV 10-304, Parker v.
 3   McCarville, et al., on for scheduling conference.
 4            Counsel, please announce.
 5            MR. STROJNIK:  Peter Strojnik, attorney for plaintiff.    10:04:34
 6            MS. PETERS:  Kristy Peters and Laurent Badoux,
 7   attorneys for defendant.
 8            MR. STROJNIK:  And if I may clarify, I'm Peter K.
 9   Strojnik from the Strojnik Firm, LLC, aka, Junior.  My father
10   is also on this case as well.                                     10:04:49
11            THE COURT:  Your name again?
12            MR. BADOUX:  Laurent Badoux.
13            THE COURT:  The person who just spoke.
14            MR. STROJNIK:  Peter K. Strojnik.
15            THE COURT:  All right.  And Mr. Badoux, I know.          10:05:07
16            Mr. Strojnik, you really didn't comply with the order
17   of the Court for the case management report which required you
18   to give a summary nature of the nature of the case and the
19   claims.  It does not comply with that to say go read my
20   complaint.  So I'm sure you won't make that mistake again, will   10:05:33
21   you?
22            MR. STROJNIK:  I will not, Your Honor.
23            THE COURT:  All right.  And Ms. Peters, I couldn't
24   tell from your side of it, were you or were you not paying her
25   overtime?  You, I mean your client?                              10:05:55
```

```
 1          MS. PETERS:  She was classified as an exempt employee,

 2    so she was not receiving overtime, Your Honor.

 3          THE COURT:  I was looking for that, and it locked like

 4    you were hiding it in the narrative.  So the answer is you

 5    didn't pay her overtime, you paid her a flat salary, correct?      10:06:11

 6    And that's what this lawsuit is about?

 7          MS. PETERS:  She was compensated as an exempt

 8    employee, correct.

 9          THE COURT:  Well, there are cases on that.  Well, it

10    depends on exactly what her duties were, doesn't it?               10:06:29

11          Was she -- I -- you know, when I read the first run

12    through on this case, I had the impression she was a paralegal.

13    But is that not correct, Mr. Strojnik?

14          MR. STROJNIK:  That is correct.

15          THE COURT:  But the defendant's narrative is that she       10:06:57

16    was more of an administrative supervisory person.

17          MR. STROJNIK:  She was a paralegal.

18          THE COURT:  Okay.  Of course, that word paralegal

19    covers a broad universe.  So it may the not be one answer for

20    all paralegals.                                                    10:07:17

21          MR. STROJNIK:  She was a -- if I could, she was a

22    lawyer without a law degree, if that clarifies.

23          THE COURT:  What are the recent cases saying about,

24    quote, "paralegals," whether they are exempt or not?  Have you

25    all looked at that?                                                10:07:38
```

1          MR. STROJNIK:  They are not exempt.  And I apologize.

2   I don't have the case law in front of me.

3          THE COURT:  You didn't need to for this report.

4          MR. BADOUX:  Your Honor, I think you said it

5   correctly.  The key is in every of these cases, the actual          10:07:50

6   duties that a person performs, especially in smaller law

7   offices, somebody labeled a paralegal as was the case here, has

8   far more duty than just being a paralegal in a large firm in a

9   traditional sense.  And I think that's a nuance we have to deal

10  with in this particular case.                                        10:08:11

11         THE COURT:  Well, that was my -- I'm not going to

12  spoil the suspense for either of you.  I guess I am going to

13  spoil the suspense.

14         20 years ago when I started my own law firm I

15  confronted this issue and I researched it myself.  And I            10:08:28

16  actually hired a lawyer to give me an opinion.  And the

17  conclusion we came to 20 years ago is we couldn't tell for sure

18  so I paid my paralegal overtime.  But that didn't mean I was

19  required to.  It meant I was being cautious.  And my paralegal

20  was a straight conventional paralegal.  So -- and she was worth    10:08:47

21  it.

22         So having said that, that doesn't answer any question

23  about this case.  Well, there are some, quote, "paralegals" who

24  are functioning on a level of a file clerk and others are

25  functioning at the practical equivalent of the lawyer.  So          10:09:29

```
 1    where it is in between is probably what this case is about.

 2             MR. STROJNIK:  And I don't believe there will be that

 3    much discovery to actually find that out.

 4             THE COURT:  All right.  No one contemplates -- oh.

 5    You all exchanged your initial disclosures, correct?                    10:09:53

 6             MS. PETERS:  Yes, Your Honor.

 7             THE COURT:  So we'll fill that in as having been done.

 8             And no one contemplates filing any additional --

 9    bringing in any additional parties or filing any amended

10    pleadings.  So as a placeholder, we'll set a deadline of about          10:10:06

11    30 days for any motions to amend.  And that will be September 3

12    for any motions to amend pleadings.

13             Now, if you all decide you would like to have a

14    settlement conference with a magistrate judge, all you need to

15    do is jointly submit a written request and we'll grant that and         10:10:46

16    refer it over to a magistrate judge.  Just bear in mind that

17    they require some lead time to schedule it on their calendars,

18    six weeks plus or minus, depending on the judge.  So you are

19    welcome to do that.  You don't have to do that.  But we'll get

20    to the settlement conference later.                                     10:11:04

21             Let's talk about the discovery.  Mr. Strojnik, tell me

22    what discovery you contemplate.

23             MR. STROJNIK:  I anticipate some form -- office form

24    interrogatories, requests to produce e-mails, but I think you

25    are seeking depositions.  I want to depose Mr. McCarville, Rule         10:11:35
```

```
 1    30(b)(6) McCarville if there's a different person other than

 2    McCarville.  And there are two or three employees who I might

 3    want to depose.  I'm anticipating maximum --

 4            THE COURT:  Tell me what other employees you

 5    contemplate deposing.                                      10:11:57

 6            MR. STROJNIK:  At this moment, I don't recall their

 7    specific names.  However, there were some folks in Casa Grande,

 8    in the Casa Grande office who may have some information that is

 9    relevant to this case.

10            THE COURT:  About what her duties were?            10:12:11

11            MR. STROJNIK:  Exactly.  Exactly.  And also that she

12    actually did work overtime.

13            THE COURT:  Okay.

14            MR. STROJNIK:  Again, I do not anticipate more than

15    five depositions.  This is a relatively --                 10:12:24

16            THE COURT:  Well, actually, you only got to three.

17    How do you get to five?  Mr. McCarville, maybe two other

18    people.  How do you get to five?

19            MR. STROJNIK:  I said Mr. McCarville, Rule 30(b)(6) of

20    the PLC as well as two or three other employees.           10:12:39

21            THE COURT:  My hunch is if you do a Rule 30(b)(6) you

22    will probably be getting Mr. McCarville.

23            MR. STROJNIK:  That is my hunch as well.

24            THE COURT:  Don't get to depose him twice.

25            MR. STROJNIK:  All right.                          10:12:54
```

1          THE COURT:  Let me ask the defendants what discovery

2    you contemplate.

3          MS. PETERS:  We anticipate deposing the plaintiff and

4    other written discovery regarding her work schedule.

5          THE COURT:  You all haven't sent out your initial          10:13:11

6    discovery requests yet, correct?

7          MS. PETERS:  Defendant sent out theirs last week, I

8    believe.

9          THE COURT:  If you haven't, get it done so you get

10   those documents in hand.                                          10:13:22

11         Now, your proposed fact discovery deadline is fine

12   with just one exception.  You proposed a deadline of December

13   24, and I'm going to set that for December 17 and some day you

14   are all going to thank me for that.

15         MR. STROJNIK:  I agree.                                     10:13:47

16         THE COURT:  So then now, what expert do you -- experts

17   do you contemplate, Mr. Strojnik?

18         MR. STROJNIK:  Perhaps an economist.

19         THE COURT:  For what?

20         MR. STROJNIK:  For her damages.  She's still not           10:14:01

21   employed.  It's a rough market out there right now, and we need

22   an economist to anticipate or predict with an expert opinion

23   what she will be losing in terms of money in the future.

24         THE COURT:  I thought this was a wage and hour case.

25   Am I missing something or forgetting something?                   10:14:23

1          MR. STROJNIK:  There are other counts that cover --

2          THE COURT:  Tell me, well let me see.

3          MR. STROJNIK:  And Your Honor, if I may, I'm simply

4    being safe.

5          THE COURT:  Well --                                    10:14:41

6          MR. STROJNIK:  That is all.

7          THE COURT:  I thought this was an FLSA case.  What

8    other claims are alleged?

9          MR. STROJNIK:  To my recollection, Your Honor, there

10   are some statutory -- Arizona statutory claims and to be quite   10:14:53

11   frank, my co-counsel was much more familiar with those but I am

12   familiar with the fact that --

13         THE COURT:  Well, then your co-counsel should have

14   been here.

15         What am I missing, Ms. Peters?  What other claims did   10:15:05

16   he allege?

17         MS. PETERS:  He also alleged a claim for constructive

18   discharge in violation of ARS 1502 and, I believe, intentional

19   infliction of emotional distress.

20         THE COURT:  And what was the constructive discharge,   10:15:22

21   Mr. Strojnik?

22         MR. STROJNIK:  The constructive discharge, Your Honor,

23   was Mr. McCarville allegedly was making Ms. Parker's work

24   environment -- and I hate to use these legal terms -- but just

25   so objectively intolerable.                                  10:15:41

1          THE COURT:  I'm looking for specifics and not bare

2     conclusions.  What was he doing?

3          MR. STROJNIK:  Would you like the allegations or

4     the -- I cannot give you facts right now.  They are simply

5     allegations at this time.                                    10:15:58

6          THE COURT:  Yes.  Yes.  That's what I'm asking.

7          MR. STROJNIK:  You would like the allegations, Your

8     Honor?

9          THE COURT:  Right.

10         MR. STROJNIK:  The allegations, to my recollection,   10:16:04

11    are these concerning the intolerable work environment:  Mr.

12    McCarville -- or excuse me -- Ms. Parker was a leader in the

13    Phoenix office and she was charged with a number of duties,

14    including organizing paralegal workshops, including making sure

15    that -- not only that Ms. Parker did her paralegal duties but   10:16:31

16    also the other paralegals did their duties as well.

17         And Mr. McCarville was simply giving her too much

18    work, number one; she had to work the overtime.  He did not

19    compensate her for that, number two; number three -- I'm

20    visualizing the complaint.                                   10:17:04

21         THE COURT:  I haven't heard anything yet that sounds

22    remotely close to constructive discharge.  So I'm listening.

23         MR. STROJNIK:  Yes, Your Honor.  The reason why I put

24    into the joint proposed order to review the complaint is that

25    the factual allegations within the complaint are quite        10:17:17

1    exclusive.  And to be honest with you, I am not prepared to

2    argue the facts of the constructive discharge at this time.

3            THE COURT:  Well, let's go back to experts.  Other

4    than an economist, damages expert, what other experts do you

5    contemplate?                                                    10:17:45

6            MR. STROJNIK:  I do not contemplate any at this time.

7            THE COURT:  That is damage.  That is entirely within

8    your -- well, it's mostly within your command.  Why do we need

9    to wait until the close of fact discovery for you to get to

10   your economist information he needs to come forward with       10:18:03

11   opinions for future lost wages?

12           MR. STROJNIK:  I'm sorry, Your Honor.  I don't

13   understand your question.

14           THE COURT:  You all had proposed -- no.  No.  No.  I'm

15   sorry.  You didn't.  No, you didn't.  You proposed an expert   10:18:23

16   discovery -- expert disclosure of February 19, but you didn't

17   play that out.

18           What I'm asking is, I want to set a schedule for that

19   expert disclosure, and it seems to me that the information that

20   you want to get to present to your expert, you don't have to   10:18:47

21   wait until the completion of all fact discovery to get that.

22   It basically has to do with -- well, what --

23           MR. STROJNIK:  I agree.

24           THE COURT:  The amount of money she was making, what

25   she would make somewhere else?  Are you offering -- well, what  10:19:03

```
 1    are you going to offer?

 2            MR. STROJNIK:  I agree with what you just said.  We do

 3    not have to wait until a certain date.  And I could give a call

 4    to David Perry right now and figure that out.

 5            THE COURT:  Let me think out loud for a minute.  If      10:19:22

 6    we're going to have a close of fact discovery December 17, and

 7    we also made that the close of expert discovery, we would want

 8    to have, say -- I'm just going to think out loud.  Plaintiff's

 9    initial expert disclosure, say, about October 15; defendant's

10    responses, say, November 12; any purely rebuttal expert         10:19:54

11    disclosures which I think rarely are -- happen legitimately,

12    November 26.  And then we could have the close of all expert

13    discovery by December 17 as well.

14            Any problem with that, Mr. Strojnik?

15            MR. STROJNIK:  No, Your Honor.                           10:20:17

16            THE COURT:  Let me ask Ms. Peters.

17            MS. PETERS:  No, Your Honor.

18            THE COURT:  We'll set that schedule, October 15 for

19    plaintiff's initial expert disclosures, November 12 for

20    defendant's responses, November 26 for any purely rebuttal      10:20:25

21    expert disclosures and the close of expert discovery also by

22    December 17.

23            And I don't -- I blocked out the second half of

24    December.  I don't require the lawyers to do anything at that

25    time.  So let's set -- well --                                  10:20:45
```

```
 1              MR. STROJNIK:  Perhaps February, early February?

 2              THE COURT:  Well, you know, I was thinking a month

 3    after that should be more than enough to do any motions for

 4    summary judgment.  You all had suggested February 5.  I guess

 5    I'm only a week off that.                                          10:21:05

 6              All right.  We'll do that.

 7              Actually, in 2011, Friday is February 4th.  So we'll

 8    set February 4th for the deadline for filing dispositive

 9    motions.  And now we want to set a deadline by which good faith

10    settlement discussions should be had.  This just sounds like a    10:21:45

11    factually intensive case.  So I would think that we would want

12    to have that good faith settlement conference deadline before

13    you invest your money in summary judgment motions.  But it

14    might be hard to do that much before you have the discovery

15    concluded.                                                        10:22:11

16              What do you think?

17              MR. STROJNIK:  If I may.

18              THE COURT:  I guess that's sort of -- you had

19    suggested January 21, but I'm thinking by then you will have

20    done most of the work on your summary judgment motion.  So       10:22:22

21    maybe it needs to be earlier than that.  But I welcome whatever

22    thoughts you have, Mr. Strojnik.

23              MR. STROJNIK:  Thank you, Your Honor.

24              I believe we'll have a very clear picture -- and this

25    is simply what my client is telling me -- very clear picture     10:22:34
```

1   after Mr. McCarville deposes Ms. Parker and Ms. Parker deposes

2   Mr. McCarville.  I don't see any reason why these two

3   depositions cannot be completed within the next two months.  So

4   a two-month time frame.  And I can't give you a specific date

5   but that is my thinking.                                    10:22:57

6        THE COURT:  Ms. Peters, what do you think of that?

7   Actually, what you are proposing is two months should be plenty

8   of time to get those key depositions done, and that is the

9   appropriate time to have the settlement conference.  And so

10   that would be -- that would take us into October.           10:23:13

11        What do you think, Ms. Peters?

12        MR. BADOUX:  I don't mean to be a killjoy, Your Honor,

13   but you threw in a couple of things that conflict with that.

14        First, you have the attendant claims, intentional

15   infliction of emotional distress, which I have never seen     10:23:28

16   succeed in Arizona.

17        THE COURT:  Yes.  And Mr. Strojnik can't tell me

18   anything about that.

19        MR. BADOUX:  I can't tell you very much about it

20   because I don't see it in the complaint.                    10:23:39

21        THE COURT:  I have been here for six years, and I

22   can't remember a case -- well, there might have been a few

23   cases in which summary judgment was denied on that.  They are

24   thrown into every employment case.  Arizona cases are very

25   stringent, and they almost never survive summary judgment.  A  10:23:53

1    lot of them don't even survive the pleadings.  So just being a

2    jerk is not enough.

3         MR. BADOUX:  I do agree, Your Honor.  But that's still

4    an element of the damages that clearly changes the parameters

5    of any kind of settlement approach we might have, whether it is          10:24:10

6    or isn't in the case.  Because it's uncapped as opposed to the

7    FLSA damages that are finite.  The only problem with the FLSA

8    damages is that plaintiff's counsel has theorized that there

9    should be a measure of damages that is far in excess of what we

10   believe the case law supports.  So this puts us somewhere in          10:24:30

11   the neighborhood of more than 300 percent in difference there.

12        THE COURT:  I'm not quarrelling with that.  But isn't

13   the answer to that that you all -- reality derives from case

14   law and statutes.  And I'm not accusing Mr. Strojnik.  I'm not

15   endorsing your criticism of his view, okay.          10:24:55

16        But if he, like you, is going have to ground his

17   theory in sober reading of legal authorities, and we could have

18   a settlement conference before summary judgment motions.  And

19   if one side or the other is simply wildly unrealistic, they

20   will find that out later on after we have the dispositive          10:25:20

21   motions.  But I'm generally not disposed to put off the

22   settlement conference deadline because one side thinks the

23   other side is completely unrealistic about the law.  They may

24   be unrealistic about what the witnesses are going to say or how

25   it's going to play with the jury.  But the law, sometimes it's          10:25:37

```
 1    unclear but most of this area of the law is pretty clear, I
 2    think.
 3            I interrupted you, Mr. Badoux.  Tell me -- please
 4    finish your thought.
 5            MR. BADOUX:  Thank you, Your Honor.                    10:25:56
 6            I was thinking perhaps a partial dispositive motion up
 7    front might help the parties.
 8            THE COURT:  On what?
 9            MR. BADOUX:  On the issue of the measure of damages
10    under the Fair Labor Standards Act for the individual who is  10:26:05
11    misclassified under Section 541.
12            THE COURT:  What's your contention and what is his?
13            MR. BADOUX:  The means that the Department of Labor
14    has used for decades and has been generally endorsed is what's
15    called a fluctuating work week calculation which pays the     10:26:20
16    individual an additional half-time premium for hours in excess
17    of 40 if they are misclassified.  Mr. Strojnik is asking for an
18    amount of damages that essentially pays time and a half for
19    every hour in excess of 40 which would arrive at more than
20    three and-a-half times greater than the DOL's approved        10:26:38
21    methodology.  And then the other ones are the tort claims.
22            THE COURT:  Okay.  I am really not familiar with that.
23            MR. BADOUX:  If you think about it from the standpoint
24    of how to calculate the actual rate of pay of the individual if
25    somebody is deemed to be misclassified, the way to do it is one 10:26:59
```

```
 1    of two ways:  You divide what you paid them as a salary under

 2    the principle that they have gotten paid for every hour they

 3    have worked, which is the case here and --

 4              THE COURT:  One-half of the overtime?

 5              MR. BADOUX:  And then you get an overtime premium of          10:27:16

 6    half-time for every hour in excess of 40.

 7              THE COURT:  Go ahead.

 8              MR. BADOUX:  The converse position that opposing

 9    counsel is advocating here is you view the salary to only

10    covers 40 hours and then you would pay time and a half for          10:27:28

11    every hour that is in excess of 40 in any given work week.

12              THE COURT:  Okay.  I have not encountered that issue.

13    Is there case law out there on that?

14              MR. BADOUX:  The DOL has issued its opinion in terms

15    of how it has ruled, and that particular methodology has been          10:27:49

16    used in cases going all the way up to the Supreme Court.

17              THE COURT:  Mr. Strojnik, what do you have to support

18    your alternate calculation?

19              MR. STROJNIK:  I have what is in the pleadings, Your

20    Honor, at this time.  I'm not prepared to argue what Mr. Badoux          10:28:05

21    has just stated to the Court.  This is something novel.  If he

22    feels that a motion to dismiss is appropriate, he can file it.

23    I don't think -- or a motion for partial summary judgment on

24    that issue.

25              That's all I have to say on that matter.          10:28:30
```

1      THE COURT:  And this is a case where the employee was

2  nominally paid a salary on the premise that she was an exempt

3  employee as opposed to other cases I'm familiar with where

4  there was a stated hourly rate.  So when the violation

5  occurred, the employee got the overtime, the full rate plus      10:29:02

6  overtime for overtime.

7      MR. BADOUX:  This is an individual who received a

8  salary that compensated her for all hours worked.

9      THE COURT:  All right.  Mr. Badoux, do you have other

10 reasons why you think an early settlement date should -- would     10:29:37

11 not be appropriate?

12     MR. BADOUX:  No, that's really it, Your Honor.  I

13 think it's a matter of -- if there is a legal resolution of

14 those issues, the alternative is --

15     THE COURT:  My general sense is I'm generally open to      10:29:51

16 early dispositive motions.

17     MR. STROJNIK:  If I may.

18     THE COURT:  Where it could make a difference but not

19 just because somebody doesn't know how to read cases.

20     Anyway, go ahead.  That's your view of his case,      10:30:09

21 right?

22     MR. BADOUX:  I think my view is that that's a settled

23 proposition, and again, the agency that's in charge of

24 enforcing the statute adopts the view that I'm advocating.  So

25 I don't think I'm out there on a limb.      10:30:23

```
 1            THE COURT:  Mr. Strojnik.

 2            MR. STROJNIK:  If I may just end the discussion on

 3   this issue, I am amenable to the January date that you

 4   suggested.  I'm amenable to two and-a-half months from now.  It

 5   really does not matter to me.  I was simply proposing something    10:30:39

 6   if we could -- and that's my feelings on this issue.

 7            THE COURT:  Mr. Strojnik, do you anticipate any

 8   disputed facts?  We can't just give answers to legal questions

 9   in the abstract.  It has to be based on a factual basis that is

10   undisputed and that everybody has had their opportunity for        10:31:07

11   discovery on.

12            Is there any dispute on the facts that would be the

13   foundation for a motion to determine which method of

14   calculation would apply to the FLSA claim?

15            MR. STROJNIK:  I cannot answer that, Your Honor.          10:31:26

16   There has been no discovery.  I cannot truthfully answer that

17   question and I cannot speculate.

18            THE COURT:  Mr. Badoux, same question for you.

19            MR. BADOUX:  It's purely legal.  It's virtually

20   irrelevant what the facts of the case are.                         10:31:50

21            THE COURT:  The problem is you filed that motion.  So

22   are you going to file a Rule 56(f) affidavit?  Because --

23            MR. BADOUX:  It's your prerogative whether to proceed

24   with a 56(f).

25            THE COURT:  No, it's not.  I have to give everybody       10:32:12
```

1  fair opportunity for any discovery that would matter.

2          MR. BADOUX:  I firmly believe in a situation like this

3  it's, of course, possible.  When you analyze it, it's a matter

4  of how you treat the measure of damages under the Fair Labor

5  Standards Act.  It has no bearing in the facts of the                10:32:30

6  particular case.  It's a legal analysis.  You can look at the

7  dozen or so cases that have looked into it, the most recent one

8  I'm aware of in the 10th Circuit.  It's purely a legal

9  analysis.

10          THE COURT:  Is there any circuit cases going his way?     10:32:46

11          MR. BADOUX:  The circuit Court of Appeals, I have not

12  seen one going his way.

13          THE COURT:  Do the circuit cases go your way?

14          MR. BADOUX:  Yes.

15          THE COURT:  Are there district cases going his way?       10:32:53

16          MR. BADOUX:  I believe there might be one or two, yes.

17          THE COURT:  And is there a weight of authority the

18  other way?

19          MR. BADOUX:  Again, I have the Department of Labor and

20  probably 40 years of juris prudence that has adopted that         10:33:04

21  methodology.

22          THE COURT:  You have the Department of Labor and right

23  thinking.  He's got a couple of cases his way, which is --

24          MR. BADOUX:  It's a difficult area in the sense that

25  even though the agency is provided with the authority to          10:33:17

```
 1   enforce the FLSA and interpret it, at the same time its
 2   pronouncements are not given for weight of law.  So there is
 3   always a possibility where there might be a specific
 4   arrangement.  I can think of one case that involved assistant
 5   store managers, or store managers, where there was a specific
 6   arrangement on a Belo style plan where the individuals were
 7   going to receive X number of dollars for X number of hours.
 8   And in that circumstances, the Court didn't feel that using the
 9   fluctuating work week method was appropriate.
10        So you might have --
11             THE COURT:  That sounds fact-specific, though.
12             MR. BADOUX:  For something like this, yes.  Here,
13   everybody, I think, will agree we have two different ways of
14   pay, both paying on a salary basis.  And they never changed
15   regardless of the amount of hours.  I don't think there's going
16   to be a factual dispute as far as that goes.
17             THE COURT:  So I'm trying to think through whether
18   this really significantly would contribute to the resolution of
19   the case.
20        Mr. Strojnik, what have you calculated the overtime
21   hours to be and what the damage would be under defendant's view
22   of how it's calculated and under your view of how it's
23   calculated?
24             MR. STROJNIK:  Your Honor, I don't have that number.
25             THE COURT:  Sounds like the wrong lawyer from your
```

10:33:38
10:33:56
10:34:14
10:34:32
10:34:55

1   firm came to this hearing.

2           MR. STROJNIK:  If I may, Your Honor.  My father is

3   ill.

4           THE COURT:  All right.  Then that explains that, and I

5   hope he does well.                                              10:35:07

6           THE COURT:  What's your answer to that question, Mr.

7   Badoux?

8           MR. BADOUX:  The calculation, and I unfortunately have

9   the figures from the original complaint, I think, that were

10  amended upward in the amended complaint, were almost $62,000.   10:35:24

11          THE COURT:  62 is which calculation?

12          MR. BADOUX:  Calculation of damages for FLSA.

13          THE COURT:  Under your calculation?

14          MR. BADOUX:  No, under plaintiff's calculation.

15          THE COURT:  What is it under your calculation?          10:35:41

16          MR. BADOUX:  About $12,000.

17          THE COURT:  By the way, Mr. Strojnik, if lead counsel

18  is ill, we're certainly open to a motion to continue these

19  conferences if the appropriate attorney is not available for

20  reasons beyond their control.                                   10:35:54

21          MR. STROJNIK:  That's okay, Your Honor.  Actually, I

22  have never practiced before you.  Generally, my experience in

23  these Rule 16s, CMCs, is lickety-split, for lack of a better

24  word.

25          THE COURT:  All right.                                  10:36:09

1          MR. STROJNIK:  I actually was prepared to baby sit my

2     daughter all day today.  My wife is out of town.  I had to

3     really act fast on this matter.  I apologize to the Court if I

4     am not prepared.  I believe I have a relatively reasonable

5     grasp of the case at this time, but if I do not according to        10:36:27

6     the Court, I sincerely apologize.

7          THE COURT:  Well, I understand why you come here less

8     prepared than I was expecting, and I certainly hope your father

9     recovers promptly.

10         All right.  $12,000 under your view of the case.  You          10:36:39

11    know, Mr. Badoux, I think maybe you have persuaded me that it

12    might make sense to attack that issue at the threshold if it's

13    that significant in terms of the practical economics of the

14    case.  You do need -- well, the problem is, it would be most

15    unfortunate if the response was that they needed -- there are      10:37:33

16    disputes about the facts that could bear upon the analysis.

17    And I can't prejudge that because I'm not familiar with this

18    issue.

19         MR. BADOUX:  And I have a way to address that.  I

20    would suggest issuing some RFAs on that particular issue           10:37:47

21    because there really would only be that one question of fact as

22    to what the salary was intended to cover between the parties

23    and that could easily be handled in an RFA and we would know

24    within 30 days whether there was a fact dispute and whether it

25    would be worthwhile to proceed with a preliminary motion to        10:38:04

```
 1    dismiss.

 2          THE COURT:  Why don't we do it this way.  You go ahead

 3    and proceed as you wish.  I'm going to require you still to

 4    file a motion for leave to file an early motion for summary

 5    judgment.  But all I'm going to look for in that motion is that     10:38:17

 6    this factual base is settled.  So you don't need to write the

 7    whole motion to file motion for leave.  I contemplate just

 8    seeing what comes up.  And if Mr. Strojnik's response is, oh,

 9    no, we have some fact issues and you have something credible, I

10    would probably deny you leave to file a motion.  But you have      10:38:37

11    to have something specific that I could fairly look ahead to

12    and say, yes, that would probably leave me under Rule 56(f) to

13    give him more discovery.

14          But if you can flush it out in the way you

15    contemplate, then I will be disposed to allow that.  So when       10:38:53

16    you file that motion for leave, I want it to be short.  And so

17    I don't want to create a significant burden on you to file that

18    motion.  If the facts are pretty straightforward I will be open

19    to that.

20          Okay.  All right.  Now that is the early -- well, in         10:39:09

21    light of that, let's play that out.  Tell me, Mr. Badoux, when

22    you think you would have that motion.  Assuming I get that

23    motion and a quick response -- by the way, I want you to talk

24    with Mr. Strojnik or his co-counsel before you file that motion

25    and find out whether there's opposition or not.  Because if        10:39:33
```

1   there isn't opposition -- if the facts are not disputed then

2   I'm telling you all now I'm disposed to grant that to allow

3   that motion to be filed.  The only thing I'm looking for is to

4   see whether there are disputed facts that are likely to matter.

5           So if you file that motion, the probability -- it may          10:39:50

6   not be opposed and I may quickly be able to rule on it.

7   Factoring that in, when do you think you would be in a position

8   to file a Motion for Summary Judgment on that issue?

9           MR. BADOUX:  Middle of September.

10          THE COURT:  Okay.  I should probably have that ruled          10:40:12

11  on in November, early December.  Well, I can't guarantee

12  anything.  But --

13          MR. BADOUX:  The only alternative, the RFA requires 30

14  days for the response.  The only way would be to shorten that

15  time frame if we're all in agreement to do that.          10:40:32

16          THE COURT:  Well, I urge you to confer with Mr.

17  Strojnik or his co-counsel and see -- if, in fact, you don't

18  have a dispute it's better for lawyers to talk on the phone

19  than send written discovery that takes 30 days.  If you know

20  you are not going to have a dispute, favor me with a          10:40:50

21  stipulation on that.

22          And then I guess what I'm trying to figure is whether

23  I would have that done in time to have a settlement conference

24  before December, and the answer is I think there are too many

25  contingencies here.  So I think I could have that ruled on          10:41:05

1    before then, but I think the date you suggested of January 21

2    probably is the best we can do in light of defendant's desire

3    to have that motion decided.

4            So we'll set January 21 as the deadline for the good

5    faith settlement conference.  And then -- let's see.  Did I set        10:41:23

6    a schedule for dispositive motions?  I thought I did.

7            MR. STROJNIK:  February 4.

8            THE COURT:  All right.  Good.

9            I think that is everything.  Anything I left out?

10            THE COURTROOM DEPUTY:  Pretrial order deadline.                10:41:40

11            THE COURT:  Oh, yes.  Pretrial order deadline.  We'll

12    set February 18 as the deadline for proposed final pretrial

13    order.  If dispositive motions are filed then that date will

14    fall out to be reset if necessary after ruling on.

15            And this would be a back-end dispositive motion, Mr.          10:41:57

16    Badoux.  If you do the early one I will have that ruled on.

17    You will still have the opportunity to file motions for summary

18    judgment on other issues.  And that's what I'm talking about.

19            THE COURTROOM DEPUTY:  Expert deposition date?

20            THE COURT:  Expert deposition date?  Did I not get            10:42:15

21    that wrapped up?  Let's see.

22            MR. BADOUX:  I thought you said we had to close all

23    expert discovery by October 17.

24            THE COURT:  That's right.  That's what I said.

25            So we'll repeat that.  December 17 for the close of           10:42:34

```
 1   all expert discovery.
 2           Anything else, Kathleen?
 3           THE COURTROOM DEPUTY:  That's it.
 4           THE COURT:  Counsel, is there anything either of you
 5   would like to bring up that would assist us in processing this      10:42:42
 6   case?
 7           MR. STROJNIK:  No, thank you.
 8           MS. PETERS:  No.
 9           THE COURT:  If this gets down to -- obviously, if it's
10   a whole lot more money, it's a very different case.  If it's a      10:42:53
11   $12,000 case at most, you all ought to be able to resolve that.
12   And if you don't, I will.
13           So with that we'll be adjourned.  Thank you.
14           (Proceeding concluded at 10:43 a.m.)
15
16
17
18
19
20
21
22
23
24
25
```

UNITED STATES DISTRICT COURT

1

2

3

4                    C E R T I F I C A T E

5

6        I, LAURIE A. ADAMS, do hereby certify that I am duly

7   appointed and qualified to act as Official Court Reporter for

8   the United States District Court for the District of Arizona.

9        I FURTHER CERTIFY that the foregoing pages constitute

10  a full, true, and accurate transcript of all of that portion of

11  the proceedings contained herein, had in the above-entitled

12  cause on the date specified therein, and that said transcript

13  was prepared under my direction and control.

14        DATED at Phoenix, Arizona, this 3rd day of September,

15  2010.

16

17                              s/Laurie A. Adams

18                         _____
                            Laurie A. Adams, RMR, CRR

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT